Please rise. This Honorable Appellate Court of the 3rd Judicial District of the State of Illinois is now in session. The Honorable Justice Mary Kay O'Brien presiding. Please be seated. Would the clerk call the first case, please? 3-15-0097 C.H. Robinson Co. et al. Appellees Cross Appellants by Don Sampin v. Toad L. Dragon Express, Inc. Appellants Cross Appellees by David Lewin. Mr. Lewin, good morning. May it please the Court, Court and Counsel, Dave Lewin for Toad L. Dragonfly. We're here today because of a case that I'm sure this Court is well familiar with. This is the third time it's been up. Once it was up on the trial verdict, then you had related pleader action. Now you have the contribution action. The issue here is we have two parties that were vicariously liable for the same actor. Neither one of the parties before you today was behind the wheel at the time of the accident. One of the parties paid the judgment. The other tendered their full policy, filed an interpleader. The interpleader with the full policy has been on file for 10 years ago. It's important to note that this is a claim for contribution and not indemnification. Robinson had a claim for indemnification that was dropped at trial. As a result, we're just talking about contribution here. There's really two primary issues, both in the appeal and the cross appeal. The first one is that if a party's pro rabbit share is 100% and it pays 100%, is it entitled to contribution? Along with that, you have the cross appeal, where the issue really seems to boil down to is if a party admits liability, is that party somehow more liable than a party that's found liable at trial? Again, that second question really seems to me to be the essence of opposing parties' argument as to why they should have less of a share of liability. Okay, so you've got two parties vicariously liable. Which one pays? You know, actually, I'm enjoying several liabilities. It's the plaintiff's choice. The plaintiff has a right to go after one. They're both 100%. I'll get to that in more detail, but the way the Act is written, there's not a solution to that. I think what the trial court did was he tried to impose fairness on this. He tried to do something that was reasonable, but that's not what the Act provides. So you're saying it should have been the equity action? I'm saying that they have two potential actions. One was the indemnification action, which is contract, which was specifically referenced by this court, potential for indemnification. But when it comes to the contribution act, which is really the only basis for their counterclaim, you have to follow the Act, and the Act simply does not provide a remedy in this situation. When you have two parties that were 100%… Well, it says more than your pro rata share of liability, right? Pardon? If you pay more than your pro rata share of liability for joint tort fees or something, you can see… Right, if you pay more than your pro rata share, right. But under joint and separate liability, if somebody is over 50% at fault, they're still 100% liable to the plaintiff. Right, and they are. If you go farther than that, this court has previously found that if you're vicariously liable, you're 100% liable. Well, but you have two people 100% liable. Right. So can the plaintiff go collect from both of them? No, they can't. There's only one judgment. We covered that in the second action here. So were there contribution claims at trial? Yeah, there were. A contribution action at trial, and I'll get to that too, there was an issue in the prior decision by this court about allocation. They asked for allocation. That went up on appeal. The trial court said, no, you cannot allocate fault between Dragonfly and Robinson. That was appealed. They said, no, you can't do that. Because they're both vicariously liable. Vicariously liable. It's both 100%. How do you split 100%? I think that's… Divide it by two works, doesn't it? You could, but that's not what the act says. It says you have to be more than not your fair share, more than your pro rata share. Your pro rata share is 100%. To get to 50%, you have to pay 101% to pay more than your pro rata share. There's no allegation of that. This all started with the court's affirmance of the no allocation of fault, right? That's correct. That's why we're hearing it. It is, and there's the question of the no allocation of fault. There was, after this court ruled in, I think, 2011 on that, he went forward both on the action for the interpleader move forward, obviously there was appeal on that, and the contribution action move forward. That relates to the proceedings before the trial court, which I think are relevant to the next issue, which is your standard of appeal. I want to talk a little bit about what that should be. I think it should be de novo. When this court bounced it back to the trial court, there was a question of whether the trial court would, first of all, the same judgment here, and that ended up not being the case, so you don't have a trial court that heard any live evidence here. You have a, what he did was the same as this court is doing now, which is you're reading the transcripts. Effectively, it was the same as a summary judgment. You have evidence before you. There's no way to judge the credibility of any witnesses. We all know that we've all been in courtrooms where you say, hey, I'm not going to believe that person. Here's the way they're sitting there on the stand. The trial judge who heard the contribution act never had that advantage. So you really have the equivalent of a summary judgment motion. You have a long line of cases. Just briefly, Jewellers Mutual v. Fisher, summary judgment reviews de novo. Conn v. BDO, the standard is the same as the trial judge would perform. Housing counsel seems to think that there is a mixed questions of law and fact. I don't think that's accurate because there really are no questions of fact that anyone could decide or that the trial court could decide any differently than this court. Again, you have the trial court reviewing this based on transcripts. That was it. Robinson relies on Mulhotny v. St. John for their question that you should treat this differently. However, Mulhotny had six days of hearings and seven witnesses. In this case, no live witnesses. Well, isn't both legally and factually this case really simple? The question was, does the contribution act apply when you've got two tort cases, both of whom are vicariously liable, and one of them pays the judgment? A hundred percent, yeah. And that's why it should be de novo. If the answer is yes, it does, then you lose. If the answer is no, it doesn't, your opponent loses. I agree. That's our view on the standard. That's why it should be de novo. This court is as equally able to reach that conclusion as a trial court. There's no evidence that you need to hear to reach that conclusion. Where was the difference? At trial, you admitted negligence, didn't you? That's correct. The allegations against Deanna Henry were that she, whatever it was, she drove a car too fast to be able to maintain a proper lookout, those typical actions. For Dragonfly, the allegations were all along the lines of vicarious liability. I don't know if there was... So you're saying your liability, your admission of negligence, just went to a vicarious liability? Absolutely. There's two parties. There's something else that was pled against Dragonfly. There's something else we couldn't have. We were held liable, and I'll get to that a little bit, too. We were held liable effectively because of the federal trucking regulations. We say if your sign is on the door, no matter what happens, no matter what you did, you're liable. Once we knew, once it was established before the trial that that sign was on the cab of that tractor, we were liable for it. Game over. We admitted negligence because we could have put a jury through three days of trial saying, is this, you know, do we control the person? That's not really the issue. The only issue that we had was, under the law, is if your sign is on that tractor, your numbers are on that tractor. So what we admitted, again, was vicarious liability. Henry admitted that she drove too fast, and whatever those allegations were, the tragic allegations of this accident, however, not Robinson, Dragonfly admitted that they, under the law, controlled her, and they did. And that's what the jury found that Robinson also was responsible for. What it comes down to is it's the same thing. We admitted it. We admitted vicarious liability. They went through a couple weeks of trial, whatever it was, and it was found. So anyway, the Contribution Act then looks at the pro rata share. You have a right to contribution. You have to pay more than your pro rata share. Robinson's making the claim they've got the burden. They have to prove that they pay more than their pro rata share. If Robinson can't prove that they pay more than their pro rata share, it's game over. There's no recovery. It's like any other case. You pay the burden. You're the ones before the court. You have to prove it. However, the act is silent as to what is done when the pro rata share is the same as the payment. If you pay 50% and your share is 50%, and another party is 50%, what do you do? There's no remedy. The act doesn't specify a remedy for situations like this. Why isn't Section E controlling? That's a good question. Section E is the one that says that if you didn't release the other party in your settlement, that you can't get contributions from that party. Yeah, I think that's also an interesting point. There's an issue whether this was a release or whether this was a satisfaction of judgment. However, the point you're making is very valid. The release of judgment specifically excluded my clients from it. The document said it's title satisfaction, but it really reads like a release. So I think, yeah, there's a real question of whether that applies as a release and you fall under the act. Well, since they paid the entire judgment, they effectively released your client because the plaintiff couldn't go after you because you're going to go up there and say, Judge, the judgment's been satisfied. He only gets one judgment. Yeah, that became an issue on the second appeal on this. I don't think that that was decided at the time of the payment. You had a 2011 Spurl case, and you had Carolina Casualty, which came down last year. Carolina Casualty was the one that finally shut the door on whether Dragonfly would own any additional funds. There was still a battle over roughly $500,000 coming from that, and that was decided in Carolina Casualty v. Spurl where this court said, Hey, you got one judgment, that's it. There was a question of conscious pain and suffering, which was thrown out under a post-trial motion. So when they actually filed the satisfaction or release or whatever you want to call it, at that point there was some question as to whether Dragonfly would have an additional $500,000 in liability. Well, I've got a question. What happened when you said you interpreted your policy? Yeah, and that's currently pending. There's a million-dollar policy that would cover Dragonfly. That's the only coverage that there was. As soon as Dragonfly and their insurer realized that there would be these claims, public fatalities and the rest, they did, I think, morally the correct thing of, you know, we're going to let the court decide where this should go. So that million-dollar policy is currently pending. I called the housing council on this yesterday to find out the status. Apparently the judge in hearing the interpleader, which again was before you last year, that case is on stand-by waiting for this court to rule. There are other claimants that are still waiting to be paid under that policy. I don't know the amounts, but I know that the million dollars has been sitting there roughly since everyone realized how bad the accident was. So, yeah, the interpleader is still pending and waiting for this court to rule on this to distribute that million dollars. But that's not to this issue. No, the question, though, is what the interpleader, and that's what's going on with the interpleader. That's what's going on with the policy. So as I was saying, the act is silenced through what you do when the pro rata share is the same as the payment. The act doesn't provide a remedy. What the trial court did was it tried to effectively create a solution when the act doesn't provide a solution. What they did really was write new law, and that's not, unfortunately, a job for the trial court or for this court. You have to follow the act as written. The act says more than their pro rata share. Pro rata share is 100%. That's what they pay. Well, that's true of everybody who's jointly and severally liable because in that regard, the plaintiff can come to you and say, okay, you were found liable, so give me my, I want it all for me. That is the case. It's more so the case, though, in this situation where you have the same basis of liability, and that's vicarious liability. Vicarious liability is an interesting feature because what you have is that they're 100% liable, but they're 0% at fault. So under the law, again, their pro rata share is, first of all, either my client's pro rata share is zero, so you can't be forced to pay zero because that's what their fault is, or their pro rata share of the other side's pro rata share is 100. Either way, it's the same. Well, but the same argument you made is if your client's pro rata share, based on fault, is 0%, so is the appellee because it's vicarious liability. The same argument you made, they're 0% at fault. And if you want to go that route, though, then our contribution would also be zero because it's based on fault, and you still analyze it the same way. It's either... Is that why, as a simple mind would say, this act doesn't... Okay. Pardon? Excuse me. Okay. Is that why a simple mind would say the Contribution Act isn't the proper procedure here? I mean, you're trying to fit a shoe into a brick. I think that's accurate. I don't think that their remedy, if they had one, would be under the Contribution Act. The Contribution Act is what they pled, though. That's how they brought their case. If they had some other remedy, they could have brought it. They could have pled it. Well, that's a gestural argument. Right, exactly. And under the Contribution Act, which is what this case has been pled under, they didn't do that. We talked about what's pro rata share. Pro rata share is based on relative culpability. Culpability, as opposing counsel noted several times in their brief, is based on fault. This court in Spurl has said specifically that there is no fault, that when you have vicarious liability, you do not have fault. This court has also said that there's no way to allocate fault. So it's really impossible to do what they're trying to do, which is allocate fault. You have no fault. And when they asked for an instruction on it, this court said, if you can't do it, we can't allocate. This court said that Robinson is entirely liable, and neither Dragonfly nor Robinson have any fault. So this court's decision was consistent with a long line of cases, most notably American National versus Columbus-Cuneo. Vicarious liability is really a basis for indemnity, not for a portion of damages between principal and agent. Only the agent is at fault. The principals are not at fault. This court, again, discussed it previously in the Spurl case that was before you in 2011. Again, they wanted this allocation instruction somehow to split the line of bill. You said you couldn't do it. So simply crafting this 50 percent solution out here, it's judicially created. It's a trial court thought this would be fair. Fair is great, but it's not, again, consistent with the EAC. You have to follow the Contribution Act. Mr. Sampin. Mr. Sampin. May it please the court, my name is Don Sampin. I represent the Robinson entities in this appeal. Let me clear up one point here. The basis for Dragonfly's liability was not vicarious. There's nothing in the trial court that indicates the basis of its liability is vicarious. It admitted negligence throughout the trial court proceedings. Negligence is a form of fault. So we have to start there. I'm going to return to that point in just a few minutes. Let me talk a little bit about the distinction here between liability and fault for purposes of the Contribution Act and what is and is not recordable under the Contribution Act. Dragonfly's main position, as your honors have noticed, is that Robinson was 100% liable for the $28 million that it paid. It therefore paid no more than what it owed, and therefore, Dragonfly says, we're not entitled to contribution. As Justice Schmidt has pointed out, each of the three defendants in this case was 100% liable for that $28 million. And the fact that Robinson stepped forward and paid off the judgment does not in any way count against its right to contribution. If it did, we wouldn't have a need for a contribution statute in Illinois. Because the whole purpose of the contribution statute is to allow one defendant, who is jointly and severally liable for the entire amount, as your honors pointed out, to collect from others who are similarly jointly and severally liable, but are more at fault. That's the Contribution Act? That's the Contribution Act. Okay, so what's the metric? I'm sorry? What's the metric, to use the modern business? The metric is fault. There's a distinction between fault and liability. All three defendants were 100% liable, but they weren't all at fault. This court found in the 2011 appeal that Robinson had no fault because its liability was vicariously imposed. And if it had no fault, then it is potentially entitled to recover from the other two defendants, who were at fault, 100% of what it pays them. Isn't the problem with the act and the concept of vicarious liability? I mean, you're pointing out, conceptually, the problems here. We've got vicarious liability that we've got. You're 100% liable, but there's no fault. There's no fault. And yet, when you get into the Contribution Act, don't we talk about fault? Absolutely. Right. Absolutely. And Section 3 of the statute says that the pro rata share is based upon relative culpability among defendants. So when Mr. Roy gives up and says that Robinson only paid its pro rata share, it didn't pay pro rata share. It paid $28 million more than its pro rata share based upon relative culpability, as set forth in Section 3 of the Contribution Statute. So there's liability, there's fault. Robinson had no fault. It had 100% of the liability, just like Dragonfly did, just like Ms. Henry did. It paid off the liability, and now it's entitled to contribution. Are there any equitable actions you could have brought other than under the Contribution Act? I mean, I realize we have a throwaway overdue victim line in our last case that said you can seek contribution. I don't consider that to be throwaway, Your Honor. Well, I guess. Were there other actions we could have brought? Well, yes. As a matter of fact, we tried to bring. In my simple mind, you've got a judge doing equity here. Well, I think equity is a significant part of the Contribution Statute. The whole purpose of the Contribution Statute is to do equity. So I don't disagree with you, Your Honor. I don't think that separate equitable action was necessary. It looks like you're about to ask a question, Justice McCain. I am. I feel like I'm kind of hipped on this one subject, but I don't understand how we even get to all of these other issues. Sure. Because you did not in your release name Dragonfly, which under the statute precludes you from seeking contribution from them. I respectfully disagree with that, Your Honor. And I disagree because the statute, Section 2E, talks about settlements. It doesn't talk about the satisfaction of a judgment. And there's a distinction between the two. If you look at the statute, it says a tortfeasor who settles with a claimant, et cetera, et cetera. There was no settlement in this case. It went all the way through trial and an appeal and a second appeal. And now we're hearing a third appeal. There's been no settlement to talk about here. We didn't have to release anybody. As Justice Schmitt pointed out, the satisfaction of judgment operated as a release as a matter of law. We didn't have to add some language to the satisfaction saying, well, we've satisfied the judgment. You're released because of that. And you're released because we say you're released. That happened as a matter of law once the satisfaction was filed. As a practical matter, you settled with the plaintiff. Absolutely not, Your Honor. We satisfied the judgment. We took the appeals from the tort judgment. Your Honor's affirmed. There was no settlement. There was no reduction in the judgments that were entered. We paid off the $24 million tort liability plus another $405 million in interest. That's not a settlement. Is there a definition in the statute that distinguishes a settlement under this section from a satisfaction? Yes. We've cited the solemnity case in our opening brief, Your Honor. And that draws the distinction between the two. And in that case, similar to this case, there was no mention of a release as part of the satisfaction. And the court said it doesn't matter. As a matter of law, you're released once the satisfaction is filed. So in our view, Section 2E has no operation here at all. So far as apportionment under Section 2-1117, this court did hold in 2011 that we were not entitled to an apportionment under that statute. But the purpose of that statute is to determine the liabilities as between the defendants vis-à-vis the tort plaintiffs. This is a little action. This is a contribution action. 2-1117 doesn't have anything to do with contribution. And for purposes of Section 2-1117, we didn't need an allocation in order to get contribution. In a few sentences, and I'll go back to what Your Honor referred to as the throwaway statement, which I don't consider to be throwaway. A few sentences after this court held we weren't entitled to an allocation under 2-1117, this court said we may nevertheless have a right to contribution against Dragonfly. You may. We did use the word may. You may use the word may. I mean, there's a lot of issues involved with contribution, but we're resolving those issues in this appeal. And this court would not have made that statement if 2-1117 were determinative of our right to contribution. So the argument that Dragonfly has made here has already been resolved. It's the law of the case, and it's a faulty argument. Well, at best, I mean, at best that statement would be dicta, wouldn't it? I mean, that issue wasn't before the court really in front of us. Well, I think it was before the court, Your Honor. 2-1117 and the effect of 2-1116 of that statute was before the court, I believe, Your Honor. I don't think it was mere, even if it was dicta, it was important dicta. So I don't think this court would have made a statement if it had intended its ruling on 2-1117 to be determinative of contribution rights. Let me turn to the issue that Dragonfly has made even again today. It says the basis for its liability was vicarious, and that it therefore, just like Robinson, was not at fault. It's obviously an important argument for Dragonfly. It made that argument repeatedly throughout the trial proceedings, rejected every time. It's made that argument at least three times in its opening brief here on appeal, and at least five times, five or six times in its reply brief. And every time it makes that argument, it provides no record citation. You don't have to believe it. Just look at the brief. There is no record citation for the basis of its liability. And the reason there is no record citation is because there's nothing in the record to support it. Time and time and time again, Dragonfly admitted its negligence in the trial court on the record. Negligence is a form of fault. Did Dragonfly admit its negligence or the negligence of its agent? Both. Time and time and time again. If you take a look at our opening brief, we go through, we number the times in which these admissions were made. On one occasion it said there's united negligence as between Dragonfly and Henry, suggesting that they're one and the same. The trial court's instructions to the jury, to which Dragonfly's counsel agreed, these were stipulated instructions, informed the jury that Dragonfly had admitted its negligence and that its negligence was the proximate cause of the accident. So there's nothing in the record to support this. And this didn't even go to the jury. This was an instruction to the jury. That wasn't the only issue that the jury decided was Robinson's vicarious liability. So when Mr. Lewin gets up and says, well, the jury decided that there was no decision with respect to liability at all. It was all conceded by virtue of Dragonfly's negligence. Now, of course, we say that even if Dragonfly was vicariously liable and it wasn't, we're still entitled to contribution under the Equistar Chemicals case. I'm going to rely upon my brief for that argument, Your Honor. Simply because I know I'm running out of time here and I'm not going to have time to get to it. But it can't escape liability in any event. Let me just briefly, if I could, address a couple of the arguments we make by way of our cross appeal. In 2011, this Court found that Robinson had vicarious liability, but that Robinson was not at fault. And if that's the case, as I've indicated, the judgments that Robinson paid was in excess. Any amount of the judgment it paid was in excess of its pro rata share based on fault. And that means that it's potentially entitled to recover 100% of its judgments of what it paid by way of contribution from those defendants that were at fault. So we get back again to the question of what is the percentage of fault that should be allocated to Dragonfly? We say there's two reasons why 100% ought to be allocated to Dragonfly. One is its admission of united negligence. It's admitted that it is one in the same. Look at the admissions. I encourage you to look at the admissions that we set forth in the factual section of our brief. It's admitted that it's one in the same with Ms. Henry. And that means, in our view, 100% at fault. The second reason, we say, is the federal statute that we cited at page 27 of our opening brief. It's actually a federal regulation. But it applies as a matter of law. And what it says is that Dragonfly, as the lessee of this truck, had, quote, exclusive possession, control, and use, unquote, of the tractor that caused this terrible accident. And if it had 100% of the use of that tractor, that, in our view, means it's 100% at fault. As a matter of law. Dragonfly does not deny its admission. It does not deny the applicability of this federal statute. And we think that provides a basis for finding 100% fault. Our alternative argument is under Section 3 of the Contribution Statute. And I'll try to do this in two minutes. Under Section 3 of the Contribution Statute. We started out with the proposition that Dragonfly is at least 50% at fault. That was the finding of the trial. And apart from its vicarious liability argument, which has no merit, whatever, Dragonfly does not contest that it's at least 50% at fault. No contest at all. So we start out with 50%, the other 50% being attributable to Henry. The parties have stipulated, however, that Henry's share is not collectible. And if it's not collectible, then under Section 3, her share has to be split between the other two. So Dragonfly starts with 50%. It picks up another 25% from Ms. Henry for a total of 75% at fault allocated to Dragonfly for purposes of contribution. I'm sure I'm at two minutes at this point, Your Honor. I thank you. Thank you. Thank you. Mr. Lowen, rebuttal. Good morning. It's also a response. Just a couple of quick points. First, let's talk about Section 2E. It's important to remember that when the council wants to call this a satisfaction, we want to call it a release. The reason why we want to call it a release is that when they gave that document to opposing to the plaintiff's counsel, the full amount due was not settled. This was not just extraneous language that you tossed in there, some form of language. At the time that that satisfaction, as they want to call it, was provided, there was a question of $500,000 still owing. That was in 2011 when this court ruled in the Spiro case. Shortly after that, they gave the satisfaction. However, at that point, the underlying plans were still continuing to contest that amount. They knew that the contribution, the interpleader was pending. They knew that they had a claim for that. That eventually went before this court. Almost a year ago today, this court finally ruled that $500,000 was not due. So calling this a satisfaction, just because you put a label on it, it's not really accurate. It really is a release. It shuts off their liability. It specifically preserved the plaintiff's ability to go forward with their claim. In terms of negligence, counsel says that somehow negligence does not include vicarious liability. I think that's contrary to about 100 years of case law. Negligence is a form of vicarious liability. Viability is a form of negligence. They're intertwined. You have one party liable for the conduct of another, simply because you control them under an agency theory. You're liable for them. Counsel, if you'd point out maybe this is the best move. But there is a difference between fault or liability based upon vicarious liability under agency laws and stuff, as opposed to negligence of the agent and the principal both being negligent. Right, but there's still a form of negligence, though. Fault is a separate concept from negligence. Well, we'll agree to disagree on that. I think there is a big difference between something like vicarious liability and whether that's a form of negligence. I don't think so. But at trial, did you all admit just that our agent was negligent? Yeah, we admitted the allegations of the complaint, which were under the law they had control of the driver. And that goes to the facts. So I really want to talk about that. Because when we talk about fault, I want to remind this court what this case is really about. My client is here because they stuck a sign on the door of a cab, of a tractor. They're here because at trial we heard several days of testimony in which they detailed how much control they had over the driver. When they say they're not at fault, well, technically they're not at fault. But Troy Pleasance, who was the guy that was in charge of communicating with the driver, he knew that if the driver complied with federal trucking regulations, that there was no way she could make money and still comply. When we talk about fault, really fault, you have the driver himself who caused the accident. You have them who basically forced her to drive. Or you have her self-forcing it. Right. Direction and control. Yeah, if she wants to make money, she's got to go over the hours. And when they start talking about there's no fault, I find that to be almost a little bit offensive once you know about their conduct. So those were the two couple points I wanted to make. Under 2E, you really don't have a satisfactory action, you have a release. What you have in terms of the admission is we simply admitted that under the law we had control, whatever it was, sufficient to impose liability. And again, when you look at the conduct, I don't think there's any comparison as to the conduct. At the time Appley made their payment, was that a satisfaction of the entire judgment?  At that point when they made that payment, you still had that claim being made against my client. It was actually in the interpleader action, but one of the things that we were arguing and one of the defenses in their interpleader action was, hey, we didn't release this, even though we gave a satisfaction. They raised that in the interpleader action of, you know, we can still pursue this because we specifically excluded Dragonfly from that satisfaction. We tried to argue that. They were right. They could go forward with that claim, but not on that basis. That release would have allowed them to go forward. There were other reasons why it was shut down. Well, that's my question. Was there anything to go forward after? In other words, forget the release. After they paid, was there anything as part of the judgment of trial that was left unpaid after? Absolutely. There was a question still about this $500,000 for conscious pain and suffering. It wasn't until this court ruled a year ago in Carolina Cancel, T versus Spurl, that the final amounts due on that judgment were finally put to rest. So, yeah, when they excluded my client in that satisfaction, there was a very specific reason for doing that, which was to try and preserve their right to collect that $500,000, which was still at stake. So that's one minute. Any other questions? Thank you for your time today. Thank you. So they were trying to recover the $500,000, but I'm saying was there anything that the plaintiffs could have turned to? The plaintiffs were pursuing that from Dragon's Life. They tried to pursue that through the interplayer. They tried to say, hey, we'll pay the, whatever, $8.5 each. But beyond what was interplayed between their satisfaction and beyond what had already been pled into the court on an interplayer, was there anything for the plaintiff to go after against your client? The plaintiff was trying to access the million dollars through the interplayer. Beyond that. But that million dollars had already been paid into court, right? No. The only thing that was to be resolved was, you have multiple claimants still in the interplayer. Who would they go to? You have some proper damage claims or whatever else. I'm not sure of the full amounts of that. So they were trying to establish their right to $500,000 of that interplayer. But you already paid. We tended it to the court, but the question is who would. And you know when you interplay, you know you're not getting it back. Correct. Okay. All right. Thank you. Thank you. Mr. Sampson, rebuttal on the cross appeal? I'll be very brief. In answer to Justice Schmitt's question, no, there's nothing else left to pay. Robinson paid the full amount. There were a few legal questions outstanding, but there was no liability left to pay with respect to the plaintiff's judgments against the three defendants involved in this appeal. Was interest still accruing? Interest is still accruing today. Absolutely. I mean, interest goes on and on and on until the judgments are paid. Interest is accruing. Yes. You paid it. We paid the interest that was owing as of that time, and we're trying to recoup a part of that. We're trying to recoup that by way of contribution. And so far as our contribution judgments are concerned, interest continues to accrue today. Yes. I'm sorry, I didn't mean to evade your question. Did I answer it? Yeah, but I don't understand how the interest is still accruing. There was a contribution judgment entered in the court below that's part of it that led to this appeal for $14 million against. Just if I can, I think you are on different wavelengths here. Justice McDade's question is, is the interest still running on the original judgment? The answer to that is no. The interest is not running on the original judgment vis-a-vis the tort plaintiffs because we paid it all. Right. But it was still accruing at the time that you paid it. Up until that time it was still accruing, yes. And now your position is when you got your contribution judgment below, now you're entitled to post-judgment interest on that. We're entitled to post-judgment interest on that, absolutely. Mr. Lewin tries to avoid talking about his client's admissions during the tort trial. Again, I just encourage your honors to take a look at the fact portion of our brief. One of the admissions was by Dragonfly's counsel. There's been a united negligence admission and liability, and it's only through Dragonfly that Ms. Henry, the driver, is even involved. So Dragonfly, in one of its admissions, indicated that it's primarily responsible. He tried to argue that Robinson was at fault. This court found in the 2011 appeal that Robinson was not at fault. It's a moot issue. That's all I'll say at this point. Unless you have questions. Are there any other questions? Thank you. We thank both of you for your arguments this morning. We'll take the case under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel change. All rise.